# United States Court of Appeals for the Fifth Circuit

————————

No. 26-20026
Summary Calendar

————————

United States Court of Appeals
Fifth Circuit

**FILED**
July 14, 2026

Lyle W. Cayce
Clerk

Lance Parsons,

*Plaintiff—Appellee*,

*versus*

Matthew Valdez,

*Defendant—Appellant*.

———————————————————————

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:24-CV-4112

———————————————————————

Before Davis, Wilson, and Douglas, *Circuit Judges*.

Per Curiam:[*]

This case involves a missing ballistic shield, allegations of two false arrests, and the district court's denial of qualified immunity to Defendant-Appellant Matthew Valdez. Because we find at least arguable probable cause for the arrests in question, we REVERSE the district court's denial of summary judgment and RENDER judgment in favor of Valdez.

————————————————

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

No. 26-20026

The following is depicted in bodycam footage, which both sides rely on. Around 2:00 a.m. on May 27, 2023, several deputies, including Deputies Valdez and Aldrich, arrived at Plaintiff-Appellee Lance Parsons's home. The deputies were there to arrest Parsons's adult son, Alexander, for domestic violence. Both Parsons and Alexander were in the front yard when the deputies arrived. One deputy ordered Parsons to the ground. Another trained his weapon on Alexander. Valdez restrained Alexander, and in the process placed his $7,000 ballistic shield on the Parsons' lawn. As deputies led Alexander away, Parsons was agitated and followed the deputies to their cruisers. Valdez left the scene without retrieving his shield from the Parsons' front yard.

About 30 minutes later, Valdez and Aldrich returned for the shield. When they arrived, they found Parsons was still in his front yard. But the shield was gone. When asked where the shield was, Parsons denied he'd touched anything and said he'd been on the phone with the deputies' supervisor since their departure. Parsons told the deputies to look for the shield wherever they wanted but then disengaged and settled in a chair in the yard. Aldrich returned to his cruiser to consult his sergeant, who advised Aldrich to arrest Parsons. Aldrich returned to the Parsons' driveway and told Valdez to "cuff him up." As Valdez complied, Parsons invited the deputies to search his house and, further, suggested they check a public walkway in a wooded area abutting his backyard. When asked why the shield would be on the walkway, Parsons responded that "the neighbors across the street, dude, I mean, behind us. They came over here. They stole my motorcycle before."

Aldrich placed Parsons in the backseat of his cruiser. He explained to Parsons that there was probable cause to believe Parsons had engaged in felony theft and, while Parsons might beat the charge in court, he'd have to pay "a whole lotta lawyer fees." Parsons asked *again* if the deputies wanted to "walk over there" to the walkway and see if "they took it or dropped it or

2

whatever because they all came over here looking." Valdez proceeded to the path and found the shield along the fence line of the Parsons' backyard. The deputies released Parsons and left. In all, Parsons was seized for nine minutes.

A month later, on June 20, 2023, Valdez swore out an affidavit for Parsons's arrest for felony theft of the ballistic shield. A magistrate found probable cause and a warrant issued, supported by Valdez's affidavit. Parsons was booked in the county jail and had to post bond, retain counsel, and appear in court. The district attorney declined the charge.

Parsons sued Aldrich and Valdez[1] for false arrest under 42 U.S.C. § 1983, claiming (1) his May 23 seizure was without probable cause,[2] and (2) Valdez's arrest-warrant affidavit omitted material facts, vitiating probable cause as to his later arrest. The deputies moved for summary judgment based on qualified immunity. The district court granted the motion as to Aldrich but denied it as to Valdez. Without referencing the substantive elements of theft under Texas law, segregating the two different seizures, or conducting a corrected-affidavit analysis,[3] the district court concluded Valdez did not have probable cause to arrest Parsons. It reasoned that the shield was not in Parsons's possession or home and that "other people" such as Parsons's wife were on site but not questioned or charged.[4] According to the district

---

[1] Parsons sued another deputy who notarized Valdez's arrest-warrant affidavit. Parsons's claims against that deputy and Aldrich are not at issue in this appeal.

[2] The parties disagree over whether the May 23 seizure constituted a *Terry* stop, which requires reasonable suspicion to pass constitutional muster, or an arrest, which requires probable cause. We assume the interaction was an arrest. *See Sauceda v. City of San Benito*, 78 F.4th 174, 187 (5th Cir. 2023).

[3] *See Franks v. Delaware*, 438 U.S. 154, 155–56 (1978).

[4] The district court did not specifically identify anyone other than Parsons's wife who was on the scene; nor did Parsons.

court, even if Parsons moved the shield, such action would not "conclusively establish[] a willful intent to commit theft without more." Valdez timely appealed the denial of qualified immunity under the collateral-order doctrine.[5]

"The constitutional claim of false arrest requires a showing of no probable cause."[6] Probable cause arises when there are "facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense."[7] The relevant facts are those known to the officer at the time of the arrest.[8]

Qualified immunity, however, does not hinge on whether an officer had actual probable cause to arrest a suspect.[9] An officer is entitled to qualified immunity even when he "reasonably but mistakenly conclude[s] that probable cause is present."[10] To negate qualified immunity, Parsons must show Valdez had no *arguable* probable cause to believe Parsons committed theft.[11]

---

[5] Our jurisdiction over such appeals is limited to questions of law; we lack jurisdiction where a district court finds genuine disputes of material fact preclude summary judgment. *See Kinney v. Weaver*, 367 F.3d 337, 346–47 & n.8 (5th Cir. 2004). Here, there are no underlying genuine disputes of fact: all relevant facts are reflected in the deputies' bodycam footage. *See Carnaby v. City of Hou.*, 636 F.3d 183, 187 (5th Cir. 2011).

[6] *Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 204 (5th Cir. 2009).

[7] *Id.* (cleaned up).

[8] *See id.*

[9] *See Mendenhall v. Riser*, 213 F.3d 226, 230 (5th Cir. 2000).

[10] *Anderson v. Creighton*, 483 U.S. 635, 641 (1987).

[11] *See Brown v. Lyford*, 243 F.3d 185, 190 (5th Cir. 2001).

Under Texas law, a person commits theft "if he unlawfully appropriates property with intent to deprive the owner of property."[12] Appropriation "is unlawful if . . . it is without the owner's effective consent."[13] "Deprive" is defined to include disposing "of property in a manner that makes recovery of the property by the owner unlikely."[14] "[T]he State need not prove actual deprivation in order to prove intent to deprive."[15]

Parsons argues Valdez lacked probable cause (1) at the time he arrested Parsons on the scene, and (2) at the time Valdez later swore out the arrest-warrant affidavit. We examine each in turn.

For Parsons's on-scene arrest, we examine the facts as known to Valdez at the time he handcuffed Parsons—that is, *before* Valdez found the shield on the footpath. Given the totality of the circumstances, we find an objectively reasonable officer could believe that Parsons "appropriated" the ballistic shield with intent to deprive Valdez of it based on the following facts: (1) as far as the officers knew, Parsons was the only person who witnessed Valdez dropping the shield in Parson's dark front yard; (2) Parsons was angry with the deputies for arresting Alexander; (3) when Valdez and Aldrich returned only half an hour later, Parsons was still out front, just feet from where Valdez left the shield; and (4) the shield was nowhere to be found. Moreover, the footage does not show other people around and, given the events occurred between 2:00–2:30 a.m. in a residential cul-de-sac, a reasonable officer could presume no one else was in the area. That the

---

[12] Tex. Pen. Code § 31.03(a).

[13] Tex. Pen. Code § 31.03(b)(1).

[14] Tex. Pen. Code § 31.01(2).

[15] *Rowland v. State*, 744 S.W.2d 610, 612 (Tex. Crim. App. 1988) (en banc).

deputies could not locate the shield suggested that whoever took it intended to prevent its recovery, as well.[16]  Cumulatively, these facts support at least arguable probable cause.

Parsons protests that there was no probable cause, even if we assume he *moved* the shield to the walkway, because that scenario does not "establish an intent to deprive Valdez of his shield." But Valdez had not found the shield at the time of Parsons's on-scene arrest, so the later discovery of the shield is immaterial to our assessment of this incident. Parsons also complains the deputies didn't observe him possess the shield, and that Valdez relied on "speculation" rather than "evidence" to arrive at probable cause. These arguments are not persuasive because "[p]robable cause is not a high bar"[17] and deals with probabilities, not certainty. What Valdez observed gave rise to at least arguable probable cause. The district court should have granted Valdez qualified immunity as to the on-scene interaction.

We turn to Parsons's second arrest a month later, for which Valdez served as the affiant to secure the arrest warrant. Where "an arrest is made under authority of a properly issued warrant, the arrest is simply not a false arrest."[18] But it has been clearly established that an arrestee's Fourth Amendment rights are violated if (1) in support of the warrant, an affiant "through material omissions or otherwise, made a false statement knowingly and intentionally, or with reckless disregard for the truth" and (2) the

---

[16] *See Griffin v. State*, 614 S.W.2d 155, 159 (Tex. Crim. App. 1981) ("The fact that the deprivation later became temporary does not automatically mean that there was no intent to deprive permanently or for so long as to satisfy the statutory definition.").

[17] *Kaley v. United States*, 571 U.S. 320, 338 (2014).

[18] *Smith v. Gonzales*, 670 F.2d 522, 526 (5th Cir. 1982).

omission "is necessary to the finding of probable cause."[19] To analyze these questions, courts "correct" the arrest-warrant affidavit by fictitiously adding in the allegedly omitted facts and then determining "whether probable cause for the issuance of the warrant survives[.]"[20]

Parsons raises five facts which he contends were both material and left out of Valdez's affidavit. Analyzing Parsons's proffered facts under the corrected-affidavit analysis, we do not agree that Valdez omitted any material facts that could vitiate probable cause.

Three of the five "omissions" Parsons raises are already fairly indicated in Valdez's affidavit. Parsons's first proffered fact is that Valdez did not observe what happened between the time he left the shield and his return to retrieve it. But Valdez's affidavit states the deputies left the Parsons' home around 2:00 a.m. and returned at 2:30 a.m. A reasonable intermediary would know the deputies did not observe what took place while they were gone. The second omission is that, during this 30-minute interval, Parsons remained in his front yard on the phone with law enforcement.[21] This, too, is reflected in Valdez's affidavit: it states Parsons followed the deputies to their cruisers after Alexander's arrest and was in his front yard when Valdez returned, which is all Valdez could be expected to know. The third purported omission—that the shield was recovered from a public area and was not in Parsons's possession—is also sufficiently described. The

---

[19] *Winfrey v. Rogers*, 901 F.3d 483, 494 (5th Cir. 2018) (cleaned up).

[20] *Id*. at 495.

[21] The record is unclear on this fact: in one segment of the footage, Parsons states he went inside at one point. Regardless, the affidavit accurately depicts the facts within Valdez's knowledge.

affidavit states Valdez found the shield "on the side of the walkway, next to the fence line" of the Parsons' home.

Parsons's next proffered fact is that before the shield was found, Aldrich threatened to arrest Parsons if he didn't return the shield. But Parsons fails to explain how inclusion of this statement would vitiate probable cause. Moreover, Valdez was not present when Aldrich made the statement, so there is no reason to believe Valdez's failure to include it in the affidavit was "intentional" or "reckless." [22]

Parsons's final omitted fact is that he reported to the deputies that "neighbors and third parties" were near the scene, including some who'd previously stolen Parsons's motorcycle. Of all of Parsons's alleged omissions, this presents the closest question. It is true that Parsons told the deputies more than once that he saw neighbors in the area and that Valdez did not include these statements in his affidavit. However, we find that even if these reports had been included, it would not destroy probable cause. The affidavit accurately depicts the crucial fact that, at the very moment Valdez handcuffed Parsons, Parsons directed the deputies to the precise location of the missing shield. Parsons's knowledge of the shield's location on a nearby wooded footpath, coupled with the timing of his admission, is sufficiently inculpatory to maintain probable cause even alongside his reports that unnamed third parties were nearby. [23]

Because we find (1) arguable probable cause existed for Valdez's on-scene arrest of Parsons and (2) Valdez did not make any material omissions

---

[22] *See Winfrey*, 901 F.3d at 494.

[23] *See Dist. of Columbia v. Wesby*, 583 U.S. 48, 68 (2018) (holding that officers are not required to "rule out a suspect's innocent explanation for suspicious facts" to have probable cause); *see also Loftin v. City of Prentiss*, 33 F.4th 774, 781 n.3 (5th Cir. 2022).

in his affidavit in support of the warrant for Parsons's later arrest, we REVERSE the district court's ruling denying Valdez's motion and RENDER judgment in favor of Valdez.